notification of the training -- are not acts protected by qualified immunity. Consequently, Grand Rapids is not protected by vicarious official immunity as to those acts. See, Fear v. I.S.D. No. 911, supra at 215.

The same is true for Heinrich. She testified that she raised her gun at the Plaintiffs, because she was ordered to do so by Akerson. See, Heinrich Deposition, at 26. According to Heinrich, given that order, she had only one course of action -- to comply. Id. at 34. Moreover, Heinrich testified that she began to think the women might not have been aware of the training exercise, and consequently, she informed them that it was only a training program, and that they would be all right. Id. at 28-29. Further, according to Heinrich, the Plaintiffs told her that they were not aware of the training. Id. at 29, 58. Nonetheless, according to the Plaintiffs, Heinrich continued to detain them, and to treat them as if they were a part of the training scenario.[18] See, Miskovich Deposition, at 41-44; Schafroth Deposition, at 57-58; Wilson Deposition, at 44. Given these facts, which we are obligated to assume as true, and which were allegedly known by Hein-

[18]Heinrich's testimony on this point is different, as she contends that, once she was told, by Akerson, that the Plaintiffs could be released, she released them. See, Heinrich Deposition, at 30. Nonetheless, we take the facts in the light most favorable to the non-moving parties here, which are the Plaintiffs.

rich, we find that she had an absolute course of action with respect to the Plaintiffs -- she should have double checked the status of the Plaintiffs, and then release them, or at least, ensure that they were released without being further treated as participants in the scenario. Since we conclude that Heinrich is not entitled to official immunity for these ministerial decisions, we deny Grand Rapid's request for vicarious official immunity as to her actions.[19]

As a result, we grant, in part, Grand Rapid's Motion for Summary Judgment on the basis of vicious official immunity, insofar as it relates to the allegedly negligent acts of Valley, but we deny the Motion to the extent that we have found that the actions of the Reserve Officers, and Heinrich, were ministerial, and not entitled to official immunity.

---

[19]Although it may seem, at first blush, that our conclusion that Heinrich's actions were ministerial conflicts with our previous finding that Akerson's actions were discretionary, but we find no such inconsistency. In contrast to Heinrich, who testified that she was told by Akerson to keep her weapon on the women, and therefore, did so, <u>Heinrich Deposition</u>, at 26, Akerson's role in the scenario was to decide how to handle various individuals who exited the building, <u>Akerson Deposition</u>, at 16. It was, therefore, within his judgment and discretion as to how to handle the Plaintiffs. Moreover, after Heinrich had stayed with the Plaintiffs for a short while, she began to question their knowledge of the training scenario, <u>Heinrich Deposition</u>, at 28-29, and therefore, she had more information about the Plaintiffs' status than was, on this Record, available to Akerson.

b. Statutory Immunity. As we have observed, this type of immunity applies to policy-making activities at the planning level. See, Nusbaum v. Blue Earth County, supra at 719. Moreover, as had been true with St. Louis County, Grand Rapids attempts to argue, that statutory immunity protects them from their employees' negligence, because it made a conscious decision, based on various policy considerations, to conduct, and participate in, the training session which lead to the Plaintiffs' Complaints. Just as St. Louis County had misconstrued the Plaintiffs' allegations, so has Grand Rapids.

The Plaintiffs concede that "[t]he plan for this training exercise promulgated by the City of Grand Rapids Police Officer Ste[phen] Valley was actually quite good." Plaintiffs' Memorandum in Response to City of Grand Rapids' Motion for Summary Judgment, at 15. Moreover, there does not appear to be any claim, against the City, for allowing their officers to participate in the training, as such a claim would undoubtably fail. Cf., Watson v. Metropolitan Transit Commission, supra at 413; Fear v. I.S.D. No. 911, supra at 212; Maras v. Brainerd, supra at 548. Rather, the Plaintiffs target their arguments against the individual actions of the employees of Grand Rapids.

We have already concluded the Valley's actions are entitled to official immunity, so we need not determine whether Grand Rapids is

entitled to statutory immunity for those decisions.[20] Thus, the only contentions, which remain, are those against Heinrich, and the other Reserve Officers, who were manning the barricades to the entrances of the school. We are unable to accept, however, any argument, by Grand Rapids, that the decisions at issue -- namely, when to arrive at the school, whether to point a gun at the Plaintiffs, and whether to treat them as participants of the scenario -- should constitute policy infused, planning level decisions. Rather, their decisions, while not only ministerial, fall squarely in the operational decisions that statutory immunity does not protect.

---

[20]The Plaintiffs contend that, "even if the Court finds that the officers had official immunity and that the City of Grand Rapids has vicarious official immunity, it does not mean that the City is dismissed," as "the 'discretion' applicable to statutory immunity is different, and more narrow, than that of official immunity." Plaintiffs' Memorandum in Response to City of Grand Rapids' Motion for Summary Judgment, at 19-20. We disagree. First, the Plaintiffs do not appear to contend that Grand Rapids' decision, to actually hold the training, or to commit their forces to the training, was a negligent decision, which would not be entitled to statutory immunity. Moreover, we have already determined that Valley's actions are protected by official immunity, which has a broader definition of "discretion." See, Rico v. State, supra at 107. If any of the actions, by Valley, are claimed to be at the policy-making, planning level, the Plaintiffs have not alerted us to any of those decisions which are within that category, and they have rather pointedly opposed such a categorization. See, Plaintiffs' Memorandum in Response to City of Grand Rapids' Motion for Summary Judgment, at 16-18. While we certainly recognize that official immunity, and statutory immunity, apply to two different category of actions, see, S.W. and J.W. v. Spring Lake Park Sch. Dist., supra at 22, we are aware of no allegations against Grand Rapids, and Valley in particular, which fall outside of both of the those types of immunity.

See, S.W. and J.W. v. Spring Lake Park Sch. Dist., supra at 22. Therefore, Grand Rapids is not immune from liability for those decisions of its employees, and we deny Grand Rapids' Motion for Summary Judgment on the basis of statutory immunity.

c. The Public Duty Doctrine. Grand Rapids also claims that it is entitled to Summary Judgment, on the Plaintiffs' tort claims, because the Plaintiffs have failed to show that the City owed them a "special duty," which is required by the "public duty doctrine." The "public duty doctrine" instructs, that "general duties owed to the entire public rather than a specific class of persons cannot form the basis of a negligence action." Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 804 (Minn. 1979). In Cracraft, the Court held that a City Inspector's alleged failure to conduct a fire inspection with due care could not be the basis of a negligence action, as the ordinances which require such inspections, "are designed to protect the municipality's own interests, rather than the interests of a particular class of individuals," such as the premises inspected, or the rights of third persons. Id. at 805. Thus, "only a 'public' duty to inspect" was created, and such a duty could not be the basis of a negligence action, because "[i]t is a basic principle of negligence law that public duties created by statute cannot be the basis of a negligence action even against private tortfeasors." Id. Consequently, "a

municipality cannot be held liable for failing to supply general police or fire protection." Dahlheimer v. City of Dayton, 441 N.W.2d 534, 537 (Minn.App. 1989).

Nonetheless, even if a municipality's action should fall under the "public duty doctrine," a negligence action would not be completely foreclosed. Rather, as the Court in Cracraft explained:

> [A] municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspections or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with fire code violations.

Cracraft v. City of St. Louis Park, supra at 806.

Thus, a "special" duty arises when:

> (1) the municipality had actual knowledge of a dangerous condition;
>
> (2) the injured party reasonably relied on representations and conduct of the municipality or its agents so as to forego other ways of protecting himself;
>
> (3) the duty of care was created by an ordinance or statute setting forth mandatory acts for protections of a particular class; and
>
> (4) the municipality did not exercise due care to avoid increasing the risk of harm.

Dahlheimer v. City of Dayton, supra at 538; see also, Hage v. Stade, 304 N.W.2d 283, 285 (Minn. 1981); Cracraft v. City of St. Louis Park, supra at 806-07; Blatz v. Allina Health Sys., 1998 WL 901744 at *3 (Minn.App., December 29, 1998)[unpublished decision].

"Not all four factors must be met for a special duty to exist." Blatz v. Allina Health Sys., supra at *3, citing Andrade v. Ellefson, 391 N.W.2d 836, 841 (Minn. 1986).

Grand Rapids argues that the public duty doctrine applies here, because the "plaintiffs appear to assert the police should have done more to prevent them from being involved in the training exercise." Defendant City of Grand Rapids' Memorandum of Law in Support of Motion for Summary Judgment, at 19. They further argue that the Plaintiffs have not shown that the City owed them a special duty. We cannot agree with the premise, that the public duty doctrine should apply here and, therefore, we do not reach the question of whether the Plaintiffs have shown that Grand Rapids assumed a special duty.

As the Plaintiffs have acknowledged, they do not seek to hold Grand Rapids liable for a failure to provide general police protection, by alleging that the City had a duty to do more to prevent them from being involved in the training exercise -- rather, they seek to hold Grand Rapids liable for its own negligence in the execution of the training that it voluntarily undertook. Thus, we are presented with a circumstance in which the Plaintiffs are alleging

"a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed to the general public." Hoffert v. Owatonna Inn Towne Motel, Inc., 199 N.W.2d 158, 160 (Minn. 1972).

The Plaintiffs' allegations, here, are not similar to those in Blatz, where the County defendant undertook to train its peace officers to be first responders, in emergency situations, and the plaintiff complained that the County, as a result, had a legal duty to inspect and maintain oxygen kits in its patrol cars. Blatz v. Allina Health Sys., supra at *2. In that situation, the Court, in Blatz, decided that the public duty doctrine did apply, because "training deputies to be first responders able to use oxygen kits is just one more aspect of providing general police protection to the public." Id. The Court then determined whether the plaintiff had adequately alleged, that the County had undertaken a special duty. Id. at *2. Here, in contrast, the County did elect to provide training to its officers, but it is not that decision, or the officer's subsequent use of the knowledge gained during that training, that is at issue. Rather, it is the officer's actions, in conducting the actual training, that are at issue here, and we are unable to conclude that such allegations are properly within the public duty doctrine. Therefore, we need not decide whether the Plaintiffs have shown that Grand Rapids owed them a special duty,

in order to overcome the public duty doctrine, and we deny Grand Rapid's Motion for Summary Judgment on this issue.

d. The Failure to Allege Sufficient Facts for Negligent Infliction of Emotional Distress.

Lastly, Grand Rapids urges that the Plaintiffs have failed to allege, or adduce facts sufficient to support a claimed negligent infliction of emotional distress. The argument is wholly without merit.

As we have previously explained, in order to maintain a claimed negligent infliction of emotional distress, a plaintiff must prove:

> 1) [she] suffered from a physical injury;
>
> 2) [she] was within the zone of danger of physical impact, that [she] reasonably feared for [her] own safety, and that [she] suffered severe emotion distress as a result; or
>
> 3) 'there has been a "direct invasion of her rights such as that constituting slander, libel, malicious prosecution, seduction or other willful, wanton or malicious conduct."'

Hern v. Bankers Life Casualty Co., 133 F. Supp.2d 1130, 1135 (D. Minn. 2001), quoting Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 560 (Minn. 1996), quoting in turn, State Farm Mut. Auto. Ins. Co. v. Village of Isle, 122 N.W.2d 36, 41 (Minn. 1963).

In the first category, a plaintiff can recover for mental anguish which accompanies a physical injury that resulted from a negligent

act, see, Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., supra at 560, and, "[i]n the last category, negligent infliction of emotional distress is an element of the damages arising from an intentional tort that constitutes a direct violation of the Plaintiff's rights." Hern v. Bankers Life Casualty Co., supra at 1135, citing Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., supra at 560.

Here, the Plaintiffs rely mainly on the second category, which requires the following showing:

> (1) [the plaintiff] was within a zone of danger of physical impact;
>
> (2) [she] reasonably feared for her own safety; and
>
> (3) [she] suffered severe emotional distress with attendant physical manifestations.

Stead-Bowers v. Langley, 636 N.W.2d 334, 342 (Minn.App. 2001), rev denied (Minn. February 19, 2002).

Grand Rapids contends that the Plaintiffs have not shown any physical manifestation of their alleged emotional distress.

Quite to the contrary, however, the Plaintiffs have alleged sufficient physical manifestations of their emotional distress. See, e.g., Quill v. Trans World Airlines, 361 N.W.2d 438, 440, 443 (Minn.App. 1985)(finding that allegations of the physical manifestations of "adrenaline surges, sweaty hands, elevated pulse and blood pressure," were sufficient to establish a prima facie case of negligent infliction of emotional distress). For example, Mis-

kovich has complained of panic attacks, attended by excessive perspiration, shortness of breath, loss of concentration, and nervousness. See, Miskovich Deposition, at 105, 110. Schafroth asserts that she continues to suffer from general overall anxiety, and that she has been prescribed medication for that anxiety. See, Schafroth Deposition, at 70. Finally, similar to Miskovich, Wilson suffers from panic attacks, which are evidenced by heart palpitations, shortness of breath, fear, and occasional insomnia, as related to nightmares involving men in camouflage with rifles. See, Wilson Deposition, at 95, 100-01, 103-04. We conclude that, on this Record, the Plaintiffs have shown sufficient physical manifestations of their alleged emotional distress so as to survive Grand Rapids' Motion for Summary Judgment.

3. The Motions of the Reif Center and Marty for Summary Judgment.

Finally, the Reif Center, and Marty, also move for Summary Judgment. Both were sued directly by Miskovich, and her husband, but, since the Reif Center, and Marty, are Schafroth's and Wilson's employer, or an officer of their employer, they are named in those actions as Third-Party Defendants, since St. Louis County, and the St. Louis County ERT team members, have sued them for contribution.

The Reif Center, and Marty, assert that they are entitled to Summary Judgment for the following reasons: they did not have a duty to warn the Plaintiffs about the training exercise that was to occur at the high school; the Plaintiffs have not established a claim for intentional or negligent infliction of emotional distress; the St. Louis County Defendants' claim for contribution fails, because it is reliant on a finding of fault which cannot be proved; and, to the extent the Miskovich is asserting a joint enterprise claim, the Reif Center, and Marty, were not involved in a joint venture with the other defendants. In turn, Miskovich, Schafroth, and Wilson, have narrowed the contentions between the parties, and have conceded that they do not advance a claim of intentional infliction of emotional distress against the Reif Center, and Marty, nor do they contend that the Reif Center, and Marty, were involved in a joint enterprise, or venture, with the other Defendants.[21] Therefore, the only remaining claims, against these

[21]In their responsive Memorandum, the Plaintiffs only state that they do not allege that the Reif Center, or Marty, were involved in a joint venture with the other Defendants, but they mention nothing about a joint enterprise. Plaintiffs' Memorandum in Response to David Marty and Myles Reif Performing Arts Center Motion for Summary Judgment, at 23. However, as the Reif Center, and Marty, have moved for Summary Judgment on both the joint enterprise, and the joint venture claims, see, Defendant Myles Reif Performing Arts Center's and Defendant David Marty's Memorandum of Law in Support of Their Motion for Summary Judgment, at 16-18, and the Plaintiffs failed to mention, or to proffer any evidence support-
(continued...)

Defendants, appear to be the claims for the negligent infliction of emotional distress.

The Plaintiffs maintain that the Reif Center, and Marty, had a duty to warn Schafroth, Miskovich, and Wilson, about the training. There remains a genuine question of material fact as to what notice the Reif Center, and Marty, had about the training exercise because, although Marty has asserted, that he was not informed that there was going to be a training exercise on July 14, 1999, there is evidence that Adams notified Marty directly, see, Adams Deposition, at 42-43; that Adams called Lien about the exercise, and gave her the date of the exercise, see, id. at 46; Lien Deposition, at 31; and that Lien relayed that message to Marty, see, Lien Deposition, at 32. There is no dispute, however, concerning the fact that the Plaintiffs had no notice of the exercise. Further, there is no dispute that the Reif Center was not to be used as part of the training exercise, see, Valley Deposition, at 11, Adams Deposition, at 10; and Adams claims that he informed Marty as such, see, Adams Deposition, at 43.

The core of the issue presented, however, is whether the Reif Center, and Marty, owed a duty to warn Schafroth, Wilson, and

---

[21](...continued)
ing, the joint enterprise claim, we conclude that they have abandoned any such claim.

Miskovich, about the existence of the training exercise. To maintain a claim for negligence, a plaintiff must show: 1) a duty; 2) a breach of that duty; 3) a causal connection between the breach of duty and the injury; and 4) injury. See, Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982); Schmanski v. Church of St. Casimir of Wells, 67 N.W.2d 644, 646 (Minn. 1954); Boitz v. Preblich, 405 N.W.2d 907, 912 (Minn.App. 1987).[22] The Reif Center, and Marty, claim that they had no duty to warn here -- a question that is normally of law for the Court. See, Larson v. Larson, 373

---

[22]The relationship between the Plaintiffs, and the Reif Center and Marty differ, as Miskovich was an independent contractor, which implicates an analysis of the duty that a landowner owes a business invitee, while Schafroth, and Wilson, were employees. Nonetheless, the duties owed by the Reif Center, and Marty, to these differently situated persons is essentially the same. Compare, Sutherland v. Barton, 570 N.W.2d 1, 7 (Minn. 1997)(stating that "[l]andowners have a duty 'to use reasonable care for the safety of all such persons invited upon the premises'" in a case involving employees of an independent contractor), quoting Peterson v. Balach, 199 N.W.2d 639, 647 (Minn. 1972), with Stenvik v. Constant, 502 N.W.2d 416, 421 (Minn.App. 1993)(concluding that, where the Trial Court gave a Jury instruction regarding, in part, a landowner's duty to an entrant -- to wit, "a duty to use reasonable care to inspect and repair his premises and warn an entrant who comes upon his premises to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while he is on the premises," there was no harm even if the plaintiff was an employee, rather than an independent contractor, or an "entrant," as "the requested instruction on the duty of an employer is not significantly different from the instructions that were given"). The common theme in both cases, however, is that the harm must be foreseeable. See, Sutherland v. Barton, supra at 6; Stenvik v. Constant, supra at 421.

N.W.2d 287, 289 (Minn. 1985); Hellman v. Julius Kolesar, Inc., 399 N.W.2d 654, 656 (Minn.App. 1987).

Where a risk of harm is sufficiently foreseeable, a duty to warn may be imposed. See, Larson v. Larson, supra at 289; see also, Austin v. Metropolitan Life Ins. Co., 152 N.W.2d 136, 138 (Minn. 1967)("The common-law test of duty is the probability or foreseeability of injury to plaintiff."). However, the risk of harm must be reasonably anticipatible, and may not be based on what actually happened. See, Austin v. Metropolitan Life Ins. Co., supra at 138; see also, Boitz v. Preblich, supra at 912 (concluding that an incident, in which a dog that the owners knew was friendly, active, and liked to run, bumped into a neighbor and caused him to fall, "was not negligence as a matter of law because the accident was not foreseeable); Hellman v. Julius Kolesar, Inc., supra at 656 (determining that, although the accident at issue involved a utility pole that was at the side of a well traveled rode, and the plaintiff alleged that the utility company negligently situated the pole, thereby resulting in injury to the plaintiff when he struck the pole as a result of a collision with another vehicle, the collision with the pole was not a reasonably foreseeable act).

"The duty to exercise care is dictated and measured by the exigencies of the occasion as they are or should be known, and if no harm should be anticipated as a consequence of the act, there

can be no negligence." Austin v. Metropolitan Life Ins. Co., supra at 138. As the Minnesota Supreme Court has more recently explained:

> Breach of duty such as to constitute negligence in the keeping of the premises reasonably safe is not proved by the mere occurrence of an accident. Negligence must be predicated on what should have been reasonably anticipated, not merely on what happened * * *. The duty is to guard, not against all possible consequences, but only against those which are reasonably to be anticipated in the normal course of events.

Bisher v. Homart Devel. Co., 328 N.W.2d 731, 733 (Minn. 1983), quoting Johnson v. Evanski, 22 N.W.2d 213, 215 (Minn. 1946).

Therefore, unless it was reasonably foreseeable that Miskovich, Schafroth, and Wilson, would be harmed by the training exercise, while working in the Reif Center, the Reif Center, and Marty, had no duty towards these Plaintiffs, and they cannot be found to have been negligent in carrying out that duty. We conclude, given the Record as a whole, that the circumstances were not reasonably foreseeable.

This case is closely analogous to Boitz v. Preblich, supra, where the plaintiff approached the defendant's home in order to alert the defendant that the lights on his car were engaged. Id. at 909. After the plaintiff advised the defendant about the situation, an individual opened the door of the house to proceed outside to shut the car lights off, and the defendant's dog ran out

the door. The dog was a thirty-pound springer spaniel, who the defendant knew was friendly and active. Id. The dog bumped into the back of the plaintiff's legs, while the plaintiff was walking away from the defendant's home, and caused him to trip. The plaintiff was injured, and he sued the defendant -- the owner of the dog -- for, among other claimed wrongs, negligence. Id. The Court determined, however, that the resulting accident was not reasonably foreseeable, and that the defendant was, consequently, not negligent as a matter of law. Id. at 912. While the defendant admitted, that he normally kept his dog chained up while in the yard, in order to avoid him running loose, "[t]here [was] no indication that [the defendant] had any reason to anticipate that personal injury would result to [the plaintiff], or anyone else, if [the dog] left the house." Id. The Court noted that the plaintiff's injuries, "although unfortunate, were not the probable or foreseeable consequence of respondents' action or inaction." Id.

The same is true here. Even assuming, that the Reif Center, and Marty, had notice of the exercise, it is uncontroverted that all parties believed that the Reif Center was not involved in the exercise. Thus, while we could conceive of situations, which could impose a duty upon these Defendants to warn the Plaintiffs about the training exercise -- such as, the prospect that the Reif Center, and Marty, could have foreseen that Schafroth, Miskovich, and

Wilson, would observe the activities outside their windows and become scared -- that is not what happened here. Rather, the Plaintiffs complain that they were confronted, in their offices, by members of the St. Louis County ERT, and were treated as participants in the exercise and, thereby, had to submit to seizure, and detention, by the officers.

In our considered view, the foreseeability issue pivots on the uncontemplated development, that the officers would enter the Reif Center, through a door that should not have been open to them, and subject its inhabitants to the rigors of the training. Those actions were not reasonably foreseeable in view of all the precautions to exclude the Reif Center from the exercise. As a consequence, the specific harm that befell the Plaintiffs was not reasonably foreseeable to the Reif Center, or to Marty. Therefore, we grant their Motion for Summary Judgment against both Miskovich, and the St. Louis County Defendants.[23]

---

[23]We do not separately analyze the St. Louis County Defendants' claim for contribution against the Reif Center, and Marty, because the common law of contribution "does not justify * * * contribution from parties who are not liable to the injured party," as "[t]he essence of the action of contribution is common liability." Engvall v. Soo Line R.R. Co., 632 N.W.2d 560, 568 (Minn. 2001), quoting Horton v. Orbeth, Inc., 342 N.W.2d 112, 114 (Minn. 1984). "Joint liability, rather than joint or concurring negligence, determines the right of contribution." Id., quoting Horton v. Orbeth, Inc., supra [emphasis in original]. Since we conclude that the Reif Center, and Marty, cannot be liable to the Plaintiffs, as (continued...)

NOW, THEREFORE, It is --

ORDERED:

1. That the Plaintiffs' Motions to Amend the Complaint [Docket Nos. 62 (Civ. No. 00-1944) and 36 (Civ. No. 01-824)] are GRANTED.

2. That the Motions of Defendant St. Louis County for Summary Judgment on the Section 1983 Claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ. No. 01-824)] are GRANTED.

3. That the Motions of Defendants Akerson, Lehman, Peterson, and Scott, for Summary Judgment on the Section 1983 Claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ. No. 01-824)] are GRANTED.

4. That the Motions of Defendants Cuffe, Hohman, Mettler, and Zebro, for Summary Judgment on the Section 1983 Claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ. No. 01-824)] are DENIED.

5. That the Motions of Defendants Cuffe, Hohman, Mettler, Peterson, Scott, and Zebro, for Summary Judgment on the Plaintiffs' State Law claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ.

---

[23](...continued)
the harm to the Plaintiffs was not foreseeable, the Third-Party claim for contribution must fail.

Further we have not separately addressed the Defendants' assertion, that the Plaintiffs have failed to establish a claim for negligent infliction of emotional distress, as we have concluded, for reasons discussed in the text, that the Defendants cannot be held liable for any negligence.

No. 01-824)] are DENIED.

6. That the Motions of Defendants Akerson, and Lehman, for Summary Judgment on the Plaintiffs' State Law claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ. No. 01-824)] are GRANTED.

7. That the Motions of Defendant St. Louis County for Summary Judgment on the Plaintiffs' State Law claims [Docket Nos. 52 (Civ. No. 00-1944) and 26 (Civ. No. 01-824)] are GRANTED, in part, and DENIED, in part.

8. That the Motions of Defendant Grand Rapids for Summary Judgment on the Section 1983 claims [Docket Nos. 48 (Civ. No. 00-1944) and 19 (Civ. No. 01-824)] are GRANTED.

9. That the Motions of Defendant Grand Rapids for Summary Judgment on the State Law claims [Docket Nos. 48 (Civ. No. 00-1944) and 19 (Civ. No. 01-824)] are GRANTED, in part, and DENIED, in part.

10. That the Motions of Defendants Reif Center and Marty for Summary Judgment on all claims brought by Miskovich, and the claim for contribution by the St. Louis County Defendants [Docket Nos. 45 (Civ. No. 00-1944) and 23 (Civ. No. 01-824)], are GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE